IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| EDWARD ROSADO,[1] | § | |
| | § | Nos. 550, 2014 & 551, 2014 |
| Respondent/Petitioner Below, | § | |
| Appellant, | § | Court Below—Family Court of |
| | § | State of Delaware in and for |
| v. | § | Kent County |
| | § | |
| KAREN ROBERTS, | § | File No. CK11-03242 |
| | § | Pet. Nos. 13-29034, 14-07724 |
| Petitioner/Respondent Below, | § | 14-13022, 14-13032 |
| Appellee. | § | |

Submitted: December 10, 2014
Decided:   February 20, 2015

Before **STRINE,** Chief Justice, **HOLLAND** and **VALIHURA,** Justices.

## O R D E R

This 20ᵗʰ day of February 2015, upon consideration of the appellant's

opening brief and the appellee's motion to affirm, it appears to the Court

that:

(1)    The parties, appellant, Edward Rosado (hereinafter "Father")

and appellee, Karen Roberts (hereinafter "Mother"), are the parents of a

child born in June 2011 (hereinafter "Child"). Father filed these appeals

from orders issued by the Family Court on September 2, 2014, modifying

custody and visitation (hereinafter "2014 Custody/Visitation Order") and

---

[1] By Order dated October 1, 2014, the Court *sua sponte* assigned pseudonyms to the parties. Del. Supr. Ct. R. 7(d).

ruling on related petitions and motions filed by the parties (hereinafter "Sanction Order"). We have consolidated the appeals for decision.

(2) The following background is relevant to Father's claims on appeal. In September 2012, after a full hearing on the merits of the parties' cross-petitions for custody, the Family Court granted joint custody of the Child to the parties, primary placement with Mother and visitation with Father (hereinafter "the 2012 Custody/Visitation Order"). Father filed an appeal from the 2012 Custody/Visitation Order. By Order dated February 5, 2013, we affirmed the Family Court judgment.[2]

(3) As part of the 2012 Custody/Visitation Order, the Family Court made the following findings concerning a protection from abuse consent order entered against Mother in January 2012:

> The Court notes that a Protection from Abuse Consent Order ("PFA") was entered against Mother on January 24, 2012. The Order resulted from a dispute at [the Child's] doctor's office, where Father refused to allow Mother to have [the Child]. Father claims that Mother physically assaulted Father in an attempt to get [the Child] back by yelling at him and kicking him; however, both Mother and [the Child's maternal] grandmother, who was present during the altercation, deny that any physical assault took place. Mother went on to testify that she consented to the PFA because she was desperate to see her [Child].

---

[2] *Raymond v. Raymond*, 2013 WL 436215 (Del. Feb. 5, 2013).

2

In his appeal from the 2012 Custody/Visitation Order, Father argued, without success, that the Family Court erred when it failed to assess the credibility of the witnesses' testimony about the altercation between Mother and Father in the parking lot of the Child's doctor's office (hereinafter "the 2012 parking lot altercation").

(4)    In September 2013, Father began filing a series of unsuccessful petitions and motions seeking changes to the visitation schedule and relief from Mother's alleged violations of the 2012 Custody/Visitation Order. The Family Court dismissed Father's petition for a modification of visitation after a hearing in May 2014.

(5)    Following the dismissal of Father's petition to modify visitation, Mother filed a petition to modify the 2012 Custody/Visitation Order seeking, in part, final decision-making authority regarding Child's school and daycare, which had been a source of disagreement between the parties.    In June 2014, the Family Court held an evidentiary hearing on Mother's petition for modification of custody and on a rule to show cause petition and motion for sanctions filed by Mother, and on a motion for contempt filed by Father.[3]

---

[3] Mother's petition for a rule to show cause alleged that Father violated the 2012 Custody/Visitation Order by denying Mother's visit with Child on Mother's Day.

3

(6) On September 2, 2014, the Family Court issued the 2014 Custody/Visitation Order after making a threshold determination that a modification of the 2012 Custody/Visitation Order was necessary "to avoid the risk of significant impairment of Child's emotional development."[4] The court analyzed the best interest factors and determined that the Child's best interests would be served by Mother and Father sharing joint custody, primary residential placement with Mother and "generous visitation" with Father.[5] Moreover, as part of the 2014 Custody/Visitation Order, the court provided that, in the event the parties cannot agree, "Mother shall have final decision-making authority regarding daycare and schooling."

(7) On September 2, 2014, the Family Court also issued the Sanction Order, which granted Mother's petition for a rule to show cause and motion for sanctions and denied Father's motion for contempt of court. As part of the Sanction Order, the court fined Father $500.00 for his

---

Mother's motion for sanctions alleged that Father failed to attend a scheduled deposition after receiving notice of the deposition. Father's motion for contempt alleged that Mother and her attorney conspired to violate the 2012 Custody/Visitation Order when Mother refused to allow a third-party to retrieve the Child for Father's visitation.

[4] Mother's petition for modification of custody was governed by 13 *Del. C.* § 729(c), which provides that the Family Court cannot modify a prior custody order within two years "unless it finds, after a hearing, that continuing enforcement of the prior order may endanger the child's physical health or significantly impair his or her emotional development."

[5] *See* 13 *Del. C.* § 722 (listing best interest factors). *See Tatum v. Yost*, 2007 WL 2323791 (Del. Aug. 15, 2007) (citing statutes).

4

"unjustified violation" of the 2012 Custody/Visitation Order and then suspended the fine provided that Father complies with the Sanction Order and the 2014 Custody/Visitation Order.[6]

(8) Father filed the above-captioned appeals, now consolidated, from the 2014 Custody/Visitation Order and the Sanction Order. In his opening brief on appeal, Father does not address either the 2014 Custody/Visitation Order or the Sanction Order. Rather, Father asks this Court to "reopen" the proceedings that led to the 2012 Custody/Visitation Order and the appeal from that Order, on the basis that a "recently discovered audio" of the 2012 parking lot altercation proves that Mother assaulted Father, and that Mother lied in a June 2012 deposition.

(9) The Court cannot consider Father's request to reopen the proceedings that led to the 2012 Custody/Visitation Order and the appeal from that Order. The Court also cannot consider the audio and deposition Father offers in support of his request. Father's request to reopen, and the audio and deposition submitted with Father's opening brief on appeal, were not considered by the Family Court in the first instance and are outside of the record on appeal. "It is a basic tenet of appellate practice that an

---

[6] The court also ordered that Father reimburse Mother for the cost of securing a court reporter for a deposition that Father missed and for Mother's attorney's fees related to the deposition and for Mother's attorney's fees and costs related to the rule to show cause petition and motion for sanctions.

appellate court reviews only matters considered in the first instance by a trial court. Parties are not free to advance arguments for the first time on appeal."[7] "Only questions fairly presented to the trial court may be presented for review."[8]

(10) When considering an appeal from a Family Court order, this Court reviews both the law and the facts underlying the order and the inferences and deductions made by the trial judge.[9] We review conclusions of law *de novo*,[10] but we will not disturb factual findings on appeal "unless they are found to be clearly erroneous and justice requires they be overturned."[11] "The judgment of the Family Court must be affirmed when the inferences and deductions upon which it is based are supported by the record and are the product of an orderly and logical deductive process."[12]

(11) In this case, having carefully considered the parties' positions on appeal and the Family Court record, we conclude that there is no basis to overturn either the 2014 Custody/Visitation Order or the Sanction Order. In each of those well-reasoned orders, the Family Court applied the correct

---

[7] *Delaware Elec. Coop., Inc. v. Duphily*, 703 A.2d 1202, 1206 (Del. 1997).

[8] *Id.* (citing Supr. Ct. R. 8).

[9] *Mundy v. Devon*, 906 A.2d 750, 752 (Del. 2006).

[10] *Id.* (citing *In re Heller*, 669 A.2d 25, 29 (Del. 1995)).

[11] *Id.* (citing *Solis v. Tea*, 468 A.2d 1276, 1279 (Del. 1983)).

[12] *Mundy v. Devon*, 906 A.2d 750, 752-53 (Del. 2006) (citing *Solis v. Tea*, 468 A.2d 1276, 1279 (Del. 1983)).

legal standard, and the court's findings of fact, inferences, and deductions are supported by the record and are the product of an orderly and logical deductive process.

NOW, THEREFORE, IT IS ORDERED that the motion to affirm is GRANTED. The judgments of the Family Court are AFFIRMED.

BY THE COURT:

*/s/ Randy J. Holland*
Justice